# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, FSB,<br><br>　　　　　　　　　　　　Plaintiff,<br>　v.<br><br>PATRICK O'CONNOR & ASSOCIATES, L.P., d/b/a O'CONNOR & ASSOCIATES,<br><br>　　　　　　　　　　　　Defendant. | Case No. 10cv01520 BTM (JMA)<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIM AND DENYING LEAVE TO AMEND ANSWER AND TO FILE THIRD-PARTY COMPLAINT** |
| PATRICK O'CONNOR & ASSOCIATES, L.P., d/b/a O'CONNOR & ASSOCIATES,<br><br>　　　　　　　　　　　　Counterclaimant,<br>　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for La Jolla Bank, FSB,<br><br>　　　　　　　　　　　　Counterdefendant. | |

Pending before the Court are the "Motion to Dismiss Counterclaim Pursuant to F.R.C.P. 12(b)(6)" (Dkt. No. 23) brought by Plaintiff Federal Deposit Insurance Corporation (the "FDIC") and the "Motion for Leave to File Amended Answer and Third Party Action" (Dkt. No. 31) brought by Defendant Patrick O'Connor & Associates, L.P., d/b/a O'Connor & Associates ("O'Connor"). For the reasons set forth herein, the Court DISMISSES O'Connor's

counterclaim without prejudice, and DENIES O'Connor's motion for leave to amend and for leave to file a third-party complaint without prejudice.

## I.  BACKGROUND

This case arises out of a negligence and professional malpractice claim brought by La Jolla Bank, FSB ("LJB") against O'Connor in Texas state court on November 10, 2008 (the "Texas action").  In the complaint in the Texas action, LJB alleged that it hired O'Connor to appraise an apartment complex in Angelina, Texas, that was to serve as collateral for a loan that a third party had requested from LJB.  (Dkt. No. 1, Ex. 1 ("Plaintiff's Original Petition"), at 20 of 136.)  LJB alleged that it relied on O'Connor's appraisal of the apartment complex's value of $1,540,000 in reaching its decision to make a loan to the third party in the amount of $1,155,000.  (Id.)  The apartment complex, according to LJB, turned out to be "in far worse condition than indicated on the report provided by" O'Connor, and "the value of the property . . . should have been appraised at $815,000.00."  (Id.)  Ultimately, the third party defaulted on the loan, and LJB's complaint seeks damages on the grounds that it would not have entered the loan agreement but for O'Connor's negligent appraisal.

On April 15, 2010, O'Connor filed a counterclaim in the Texas action.  Without alleging any specific facts, the counterclaim asserts:

> Given the facts and circumstances of the appraisal, the relationship between the Defendant and the Plaintiff, and the fraud committed in the transaction by the Plaintiff's borrower, Plaintiff's claims and causes of action against the Defendant are groundless.  Furthermore, Plaintiff's suit against Defendant is a breach of the agreement between Plaintiff and Defendant concerning the ordering, preparation, delivery and reliance upon the appraisals performed by Plaintiff. . . . Defendant would show that Plaintiff's claims against the Defendant violate Rule 13 in that they were brought in bad faith and for purposes of harassment, with the specific purpose of extracting an unfair settlement on groundless claims. . . . Defendant is entitled to recover its reasonable attorneys fees from the Plaintiff through trial of this matter and for appeals of this matter as provided for in Rule 13.

(Dkt. No. 1, Ex. 17 ("Defendant's Counterclaim"), at 103-04 of 136.)

//

On February 19, 2010, LJB was closed by the Office of Thrift Supervision and the FDIC was appointed as receiver. (Dkt. No. 1 ("Notice of Substitution and Notice of Removal") at 1.) On July 7, 2010, the FDIC removed the Texas action to this Court. (Id.)

## II. STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n] that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted).

A party may amend its pleading more than 21 days after serving it only with leave from the Court. Fed. R. Civ. P. 15(a)(2). The Court should freely give leave when justice so requires. Id.

A defendant may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. Fed. R. Civ. P. 14(a)(1). Where, as here, the defendant/third-party plaintiff seeks to file the third-party complaint more than 14 days after serving its original answer, it must obtain the Court's leave *by motion*. Id.

### III.  DISCUSSION

O'Connor's counterclaim fails to raise O'Connor's "right to relief above the speculative level."  O'Connor spends the bulk of its counterclaim repeating its broad and unsupported claims that the Plaintiff's "causes of action against the Defendant are groundless" and that "they were brought in bad faith and for the purpose of harassment," and repeating its demand for "reasonable and necessary attorneys fees."  (Dkt. No. 1, Ex. 17 ("Defendant's Counterclaim"), at 103-04 of 136.)  On its face, the counterclaim fails to satisfy the pleading standards as articulated by the Supreme Court in Twombly and Iqbal.

The closest O'Connor comes to alleging a "cognizable legal theory" is its bald assertion that "Plaintiff's suit against Defendant is a breach of the agreement between Plaintiff and Defendant concerning the ordering, preparation, delivery and reliance upon the appraisals performed by Plaintiff."  This passage might be construed as a claim for breach of a covenant not to sue and seeking damages in the amount of attorneys' fees and other costs of litigation.

Such a construction, however, encounters three fatal problems.  First, it requires the Court to fill in too many blanks.  O'Connor does not allege that LJB made a covenant not to sue, and it is not at all clear whether O'Connor is claiming a breach of an actual agreement not to bring suit.  The quoted passage could just as easily be interpreted as an argument that the agreement between LJB and O'Connor included a waiver by LJB of reliance on the appraisal. That argument, however, would constitute an affirmative defense, and would not support a counterclaim for damages.  See Fed. R. Civ. P. 8(c)(1) ("In responding to an affirmative defense, a party must affirmatively state any avoidance or affirmative defense, including: . . . waiver.").  O'Connor's failure to provide even a minimal level of detail regarding the terms of the alleged breached agreement warrants the dismissal of any breach of contract cause of action.

Second, even if the Court were to construe the above-quoted language as a sufficiently clear allegation of breach of a covenant not to sue, the alleged covenant not to

sue cannot form the basis of a claim against the FDIC as receiver unless it complies with the requirements of 12 U.S.C. § 1823(e)(1).[1] That provision states:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement–
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). O'Connor does not allege facts that, if true, would suffice to establish any one of these four independent requirements.

Third, attorneys' fees and costs are not recoverable as damages in an action for breach of a covenant not to sue under Texas state law. See 5436, LLC v. CBS Corporation, No. H-08-3097, 2009 WL 3378379, at *15 (S.D. Tex. Oct. 16, 2009) ("Texas courts have not allowed defendants to recover attorney's fees and litigation expenses as damages on counterclaims for breach of a release agreement or covenant not to sue."); Casparay v. Woodruff, No. 13-98-106-CV, 2000 WL 3572903, at *11-13 (Tex. App. Aug. 21, 2000) (reversing lower court's holding that attorneys' fees were available as damages for defendant's counterclaim for breach of covenant not to sue, but affirming award of attorneys' fees because they were authorized in that case by statute and "equitable principles"); Jobe v. Texas Utils. Elec. Co., No. 05-94-01368-CV, 1995 WL 479645, at *6 (Tex. App. Aug. 14, 1995) (reversing award of attorneys' fees in case where defendant successfully asserted that plaintiff's breach of contract suit was in violation of release provision, where release provision

---

[1] See 12 U.S.C. § 1821(d)(9)(A) ("[A]ny agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation.").

did not specifically allow recovery of attorneys' fees). In federal court, "unless the substantive law requires [attorneys' fees] to be proven at trial as an element of damages," a claim for attorneys' fees, where authorized, "must be made by motion" after the entry of judgment, not raised in a counterclaim. Fed. R. Civ. P. 54(d)(2). O'Connor cannot overcome this obstacle unless it alleges a covenant not to sue with a choice of law clause invoking the law of a state permitting the award of attorneys' fees as damages.

For the three reasons set forth above, the Court dismisses O'Connor's counterclaim without prejudice.

Lastly with respect to the FDIC's motion to dismiss, the Court addresses FDIC's argument that O'Connor's counterclaim should be dismissed *with prejudice* because O'Connor has failed to exhaust its counterclaim through the required administrative review process. As the Ninth Circuit has explained:

> Section 1821(d)(3)(A) of [the Financial Institutions Reform, Recovery, and Enforcement Act or] FIRREA provides the FDIC, acting in its capacity as receiver, with the authority to determine claims against a failed depository institution. If a claimant submits a timely claim to the FDIC, it must determine within 180 days whether to allow or disallow the claim. If the FDIC fails to determine the claim or disallows the claim, then, under § 1821(d)(6)(A), the claimant has 60 days to request administrative review or file or continue suit on such claim in the district court. *No court has jurisdiction over the claim until the exhaustion of this administrative process*.

Intercontinental Travel Marketing, Inc. v. F.D.I.C., 45 F.3d 1278, 1282 (9th Cir. 1994) (citing 12 U.S.C. §§ 1821(d)(5)(A)(I), 1821(d)(6)(A), and 1821(d)(13)(D)).

However, before the FDIC can take advantage of this provision, it must comply with the notice requirements in § 1821(d)(3)(B) and (C):

> (B) *Notice Requirements.* The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall--
>
> (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
>
> (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

//

//

> (C) *Mailing required.* The receiver shall mail a notice similar to the notice published under subparagraph (B)(i) at the time of such publication to any creditor shown on the institution's books--(i) at the creditor's last address appearing in such books; or (ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

The Court grants the FDIC's request to take judicial notice of the "Failed Bank Information" published by the FDIC on its official website. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (holding that courts may take judicial notice of information posted on official government website where the accuracy of that information is undisputed). The "Failed Bank Information" states:

> If you or your company provided a service or product, leased space, furniture, or equipment to La Jolla Bank, FSB prior to Friday, February 19, 2010 and have not been paid, you may be entitled to a claim against the bank. . . . Please note: there are time limits for filing a claim, your claim must be filed on or before 5/26/2010.

(Dkt. No. 23-2 ("Request for Judicial Notice"), at 6 of 7.)

Based on the forgoing, the FDIC's argument that O'Connor's counterclaim should be dismissed with prejudice for failure to exhaust runs into two problems. First, by its plain language, the notice provided by the FDIC does not appear to cover counterclaims for damages arising out of a breach of contract theory. Moreover, the FDIC has not alleged compliance with the requirement that it provide actual notice by mail. The Ninth Circuit has observed that under certain circumstances, the FDIC's failure to comply with the statutory notice requirements could toll the deadline for submission of claims contained in the notice. Intercontinental Travel Marketing, 45 F.3d at 1285. Second, while the Court takes notice of statements published on the FDIC's website, the Court cannot take judicial notice of the FDIC's assertion that "O'Connor failed to file any claim for attorney's fees or sanctions with the FDIC-R as required by the statutory claims process." (See Dkt. No. 23-1 (Mem. in support of FDIC's Motion to Dismiss") at 14 of 15); Fed. R. Evid. 201(b). Thus, notwithstanding O'Connor's failure to allege compliance with the statutory exhaustion requirement (or, for that matter, to file any response to the FDIC's motion to dismiss), the Court does not grant the FDIC's request to dismiss the counterclaim with prejudice. The

FDIC's argument based on O'Connor's failure to file a claim is more appropriate for disposition on a motion for summary judgment.

Finally, the Court addresses O'Connor's motion to amend its answer and to file a third-party complaint. In support of its request to file an amended answer, O'Connor states only that it seeks to

> raise[] particular and specific defenses in accordance with the Federal Rules of Civil Procedure . . . in order to address factual and procedural matters that have arisen since the answer was filed under state rules. And, in addition, and if appropriate in order to raise any Rule 12(b), Rule 12(e), or other permitted defenses or motions and/or motions that were unavailable at the time of the answer to this suit in state Court [sic].

(Dkt. No. 31 ("Motion for Leave to File Amended Answer and Third Party Action") at 3 of 5.) Since O'Connor has not explained which, if any, new facts or legal theories support its request for leave to amend, the Court denies O'Connor's request without prejudice. O'Connor's request to file a third-party complaint is supported by specific factual allegations, but O'Connor has failed to comply with the Court's requirement that the party filing a motion first receive a hearing date from the Court. The Court therefore denies without prejudice O'Connor's request for leave to file a third-party complaint.

The Court further orders that O'Connor shall have up to and including April 20, 2012, to re-file any motion for leave to file an amended answer and/or motion for leave to file a third-party complaint. O'Connor must file as an exhibit to any such motion(s) a copy of the proposed amended answer and/or proposed third-party complaint. The FDIC shall have up to and including May 4, 2012, to oppose any such motion(s), and O'Connor shall have up to and including May 11, 2012, to reply in support thereof. Any such motions shall be set for hearing on Friday, May 18, at 11:00 a.m. **There will be no oral argument unless requested by the Court.**

//
//
//
//

### IV. CONCLUSION

A fair reading of O'Connor's counterclaim may be that it seeks attorneys' fees if O'Connor prevails in this case. Construed in that light, the claim for fees should be raised in a motion under Rule 54(d)(2), wherein O'Connor may attempt to establish that it is the prevailing party and that it is entitled to attorneys' fees by contract, statute, or other provision of the law of the appropriate jurisdiction. See Fed. R. Civ. P. 54(d)(2). For the reasons set forth above, the Court hereby GRANTS the FDIC's motion (Dkt. No. 23) and DENIES O'Connor's counterclaim for attorneys' fees without prejudice. The Court further DENIES without prejudice O'Connor's motion for leave to file an amended answer and third-party complaint (Dkt. No. 31).

**IT IS SO ORDERED.**

DATED: March 21, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court